UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSIE JETT

    Petitioner,

v.                                              CASE NO. 2:06-CV-13938
                                                HONORABLE LAWRENCE P. ZATKOFF
                                                UNITED STATES DISTRICT JUDGE

THOMAS BELL,

    Respodent,

_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on a petition for writ of habeas corpus brought by Jessie Jett, ("petitioner"), presently confined at the Carson City Correctional Facility in Carson City, Michigan. Petitioner, through retained counsel S. Allen Early, seeks the issuance of a writ of a habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree murder, M.C.L.A. 750.317; M.S.A. 28.549, and felony-firearm, M.C.L.A. 750.227b; M.S.A. 28.424(2). For the reasons stated below, the petition for writ of habeas corpus is DENIED.

## **I.    BACKGROUND**

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. Petitioner's counsel has provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent has likewise provided a detailed factual summary of the case, which does not essentially conflict with the petitioner's statement of facts. Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only

1

a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner was convicted of the above offenses for shooting and killing his cousin, Clifford Thomas, in front of his house in Detroit, Michigan on August 3, 1994, after a brief verbal altercation between petitioner and the victim. Petitioner had driven to the victim's house with his aunt, Barbara Jett, and her daughter, Sherita Jett. Barbara Jett called for the victim to come outside. Several prosecution witnesses acknowledged that the victim had a verbal confrontation with petitioner, but denied that he was armed with any weapon. Petitioner and the victim argued about some problems that the victim was having with petitioner's brothers. As the victim walked away from petitioner's car, he told petitioner that his brothers would "do what they had to do," and the victim would "do what he had to do." The victim also indicated, in reference to petitioner's brothers, that he would "pop their ass." As the victim turned to walk back into his house, petitioner fired several gunshots at the victim, with one bullet striking the victim in the back and the other bullet striking the inner side of the victim's right arm, three inches below his elbow. The medical examiner testified that these bullet wounds were the cause of the victim's death. The petitioner then got into his car and sped off after the shooting.

Police responded to the scene and found the victim laying face down on the porch. Police recovered five spent GFL mm Lugar cartridge casings from the crime scene, but did not find any weapon on or near the victim.

After unsuccesfully attempting to locate petitioner several times at his address, the police obtained a warrant against petitioner on August 12, 1994, and placed it on the Law Enforcement Information Network (L.I.E.N.). Petitioner was arrested by the police in the State of Georgia on

May 5, 2000. Petitioner was driving a maroon Chevy Caprice with a Georgia license plate. When the police stopped him, petitioner gave them a Michigan driver's license with the name Mike Osby. The license bore petitioner's photograph and description.

Petitioner's defense at trial was that he shot the victim in self-defense, and in the defense of others, after the victim had threatened to kill petitioner and had raised and pointed a gun at petitioner, his cousin Sherita Jett, and her mother, Barbara Jett. Petitioner presented his self-defense claim through his testimony and the testimony of Sherita and Barbara Jett.

Petitioner's conviction was affirmed on appeal. *People v. Jett,* No. 236922 (Mich.Ct.App. June 19, 2003); *lv. den.* 469 Mich. 1030; 679 N.W. 2d 67 (2004). Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Jett,* No. 00-8991 (Wayne County Circuit Court, April 5, 2005). Petitioner was subsequently denied leave to appeal. *People v. Jett,* No. 262229 (Mich.Ct.App. December 6, 2005); *lv. den.* 475 Mich. 869; 714 N.W., 2d 310 (2006). Further facts will be discussed when addressing petitioner's individual claims.

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. THE PETITIONER'S SIXTH AMENDMENT RIGHT TO A TRIAL BY JURY AND HIS FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS TO A FAIR TRIAL WERE VIOLATED WHERE THE JURY WAS NOT INSTRUCTED ON THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER.

II. THE PETITIONER'S SIXTH AMENDMENT RIGHT TO A TRIAL BY JURY AND HIS FIFTH AND FOURTH AMENDMENT DUE PROCESS RIGHTS TO A FAIR TRIAL WERE VIOLATED WHERE THE PETITIONER WAS NOT PERMITTED TO ELICIT TESTIMONY FROM WITNESSES REGARDING THE REPUTATION OF THE VICTIM FOR VIOLENCE TO SUPPORT HIS CLAIM OF SELF-DEFENSE, THEREBY EFFECTIVELY DENYING HIM A MEANINGFUL OPPORTUNITY TO PRESENT A VALID DEFENSE.

III. THE PETITIONER'S FIFTH, SIXTH, AND FOURTEENTH

AMENDMENT DUE PROCESS RIGHTS TO A FAIR TRIAL WERE VIOLATED WHERE THE TRIAL COURT ERRONEOUSLY ALLOWED THE PETITIONER TO BE IMPEACHED WITH EVIDENCE OF A PRIOR CONVICTION WHICH DID NOT MEET THE EVIDENTIARY THRESHOLD FOR ADMISSION, HAD NO BEARING ON HIS CHARACTER FOR TRUTHFULNESS, WAS NOT RELEVANT TO REBUT HIS TRIAL TESTIMONY, AND WAS UNFAIRLY PREJUDICIAL.

IV. THE PETITIONER'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS TO A FAIR TRIAL WERE VIOLATED WHERE A PROSECUTION WITNESS INTRODUCED EVIDENCE OF UNCHARGED NARCOTICS-RELATED ACTIVITY INTO EVIDENCE.

V. THE PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT AND CONSEQUENTLY DENIED HIS FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS TO A FAIR TRIAL WHERE TRIAL COUNSEL FAILED TO REQUEST A NECESSARY CURATIVE INSTRUCTION ON THE IMPROPER INTRODUCTION OF UNCHARGED NARCOTICS ACTIVITY AND A LIMITING INSTRUCTION ON THE PERMISSIBLE USE OF THE PETITIONER'S PRIOR FELONY CONVICTION FOR IMPEACHMENT ONLY, AND FAILED TO OBJECT TO NUMEROUS INSTANCES OF EGREGIOUS PROSECUTORIAL MISCONDUCT.

VI. THE PETITIONER'S SENTENCE VIOLATED HIS SIXTH AMENDMENT RIGHT TO TRIAL BY JURY WHERE IT WAS NOT BASED ON FACTS FOUND BY A JURY OR ADMITTED BY THE PETITIONER, THE EIGHTH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT, AND HIS FIFTH AND FOURTEENTH AMENDMENT TO DUE PROCESS WHERE THE PETITIONER'S SENTENCE WAS BASED ON FACTORS THAT WERE NOT SUPPORTED BY THE EVIDENCE AND THAT WERE TOTALLY IRRELEVANT TO THE SENTENCING PROCESS.

VII. THE CUMULATIVE EFFECT OF THE ABOVE-MENTIONED TRIAL ERRORS RESULTED IN THE DENIAL OF THE PETITIONER'S DUE PROCESS RIGHT TO A FAIR TRIAL.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. DISCUSSION

**A. Claim # 1. The lesser included offense instruction claim.**

Petitioner first claims that the trial court deprived him of a fair trial by refusing to instruct the jury on the lesser included offense of voluntary manslaughter.

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(*citing to Beck v. Alabama,*

5

447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id. Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990). *See also Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002).

Moreover, in rejecting petitioner's claim on direct appeal, the Michigan Court of Appeals held, for reasons stated in greater detail in their opinion, that petitioner was not entitled under Michigan law to an instruction on voluntary manslaughter, either under an adequate provocation theory or an imperfect self-defense theory. *Jett,* Slip. Op. at * 1-2.

Where a state court has reviewed a habeas petitioner's request for a lesser included offense instruction and concludes that it was not warranted by the evidence presented at trial, that conclusion is "axiomatically correct, as a matter of state law." *Bagby,* 894 F. 2d at 795. Because the Michigan Court of Appeals concluded that petitioner was not entitled to an instruction on voluntary manslaughter under Michigan law, petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The claim involving the exclusion of evidence concerning the victim's reputation for violence.**

Petitioner next claims that his right to present a defense was violated when his defense

counsel was not permitted to present testimony from witnesses regarding the victim's reputation for violence, so as to bolster petitioner's self-defense claim.

The Michigan Court of Appeals rejected petitioner's claim, finding that the error, if any, was harmless, in light of the fact that petitioner was permitted to elicit testimony from the witness, [Barbara Jett], that the victim had a hot temper. Barbara Jett further testified that she had personally witnessed occasions when the victim had lost his temper. On one occasion, Barbara Jett witnessed the victim threaten his mother's life while armed with a knife. In addition, petitioner testified regarding several violent acts committed by the victim of which petitioner had personal knowledge, including the victim hitting petitioner's cousin's female friend in the head with a lamp, the victim "pistol whipping" his sister, the victim setting fire to an ex-girlfriend's house while the house was occupied, and finally, the victim stabbing petitioner's brother the day before the shooting. Because petitioner was able to present evidence of the victim's violent behavior despite the court's decision not to allow evidence of the victim's violent reputation, any error was harmless. *Jett,* Slip. Op. at * 3.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is

7

incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner argues that the trial court should have permitted petitioner to elicit testimony from Barbara Jett concerning the victim's reputation for violence in the family, as this would have bolstered his self-defense claim. However, as indicated above, both Barbara Jett and petitioner were permitted to testify about numerous instances of violent conduct on the part of the victim, which established that the victim had a history and propensity of violence, so as to support petitioner's claim that the victim had a firearm in this case and was the aggressor. Because the evidence that was admitted gave petitioner a sufficient foundation to establish that he shot the victim in self-defense or in defense of others, based upon the victim's prior assaultive behavior, the exclusion of the additional, cumulative evidence to bolster his self-defense or defense of others claim did not deprive petitioner of a fair trial. *See Davis v. Burt,* 100 Fed. Appx. 340, 350 (6th Cir.

2004). Petitioner is not entitled to habeas relief on his second claim.

**C. Claims # 3 and # 4. The state law evidentiary claims.**

The Court will discuss petitioner's third and fourth claims together for the purpose of judicial clarity. In his third claim, petitioner contends that the trial court erred in admitting evidence of petitioner's prior conviction for attempted possession with intent to deliver heroin, as it was inadmissible pursuant to M.R.E. 609 to impeach petitioner, because the conviction did not have an element of theft, dishonesty, or false statement. In his fourth claim, petitioner contends that his right to a fair trial was violated when Detective Ubaldo Rios, the officer who arrested petitioner in Georgia, testified that petitioner was arrested after leaving a residence for which a search warrant for narcotics had been obtained by the police. Petitioner claims that the admission of this uncharged narcotics activity violated M.R.E. 404(b).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's challenge to the state trial court's decision to allow the prosecutor to use petitioner's prior conviction for impeachment purposes is not cognizable on habeas review, because it does not present a constitutional issue. *See Peoples v. Fulcomer,* 731 F. Supp. 1242, 1244 (E.D. Pa. 1990). Moreover, the Michigan Court of Appeals concluded that petitioner's prior heroin conviction was admissible under Michigan law to refute petitioner's testimony that he had been a

9

law-abiding citizen who carried a loaded weapon solely for his protection and that his only reason for failing to turn himself into the police arose from the fact that petitioner had been in possession of an unlicensed weapon. *Jett,* Slip. Op. at * 3-4 (citing *People v. Taylor,* 422 Mich. 407; 373 N.W. 2d 579 (1985)). The Michigan Court of Appeals concluded that even if petitioner's heroin conviction was not admissible under M.R.E. 609 to impeach petitioner's credibility, evidence of his prior conviction was admissible to refute petitioner's testimony. *Id.* This Court concludes that the prosecutor's impeachment of petitioner with evidence of his prior attempted delivery of heroin conviction did not render the trial so unfair as to warrant federal habeas relief. *See Shacks v. Tessmer,* 9 Fed. Appx. 344, 353 (6th Cir. 2001). Petitioner is not entitled to relief on this claim.

Petitioner's fourth claim that the admission of testimony concerning his possible involvement with narcotics violated M.R.E. 404(b) is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams,* 280 F. Supp. 2d at 716. Likewise, petitioner's claim that this evidence was irrelevant does not raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. *See Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Finally, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).

The Court will also reject petitioner's related claim that the trial court erred in refusing to declare a mistrial after Rios testified that petitioner was arrested after leaving a residence that was under surveillance for narcotics activity.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *See Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994). The Michigan Court of Appeals rejected petitioner's claim that he was entitled to a mistrial, finding that Rios' answer was non-responsive to the prosecutor's question. *Jett,* Slip. Op. at * 4-5. Because Rios' brief remark was unsolicited by the prosecutor, the failure to declare a mistrial did not deprive petitioner of a fair trial, particularly when this remark was a small part of the evidence against petitioner. *See U.S. v. Martinez,* 430 F. 3d 317, 337 (6th Cir. 2005). Petitioner is not entitled to habeas relief on this claim.

**D. Claim # 5. The ineffective assistance of counsel claims.**

Petitioner next contends that he was deprived of the effective assistance of counsel.

To succeed on an ineffective assistance of counsel claim, the petitioner must meet both prongs of the *Strickland* test. *See Towns v. Smith*, 395 F. 3d 251, 258 (6th Cir. 2005). The first prong requires the petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The second prong requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* test for ineffective assistance of counsel claims is "stringent." *Goldsby v. U.S.*, 152 Fed. Appx. 431, 435 (6th Cir. 2005). Under the *Strickland* standard, "'[t]he reviewing court's scrutiny of counsel's performance is highly deferential,' and 'counsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (*quoting Carson v. United States*, 3 Fed. Appx. 321, 324 (6th Cir. 2001)).

Petitioner first claims that his counsel was ineffective for failing to request cautionary or limiting instructions as to the permissible use of petitioner's prior attempted delivery of heroin conviction for impeachment purposes and that Detective Rios' testimony about the uncharged narcotics activity could not be used to prove that petitioner was guilty of the murder charge.

In rejecting this claim, the Michigan Court of Appeals concluded that the record revealed possible strategic reasons for defense counsel to forego requesting cautionary instructions as to these two issues, because defense counsel may have believed that giving the jury an instruction regarding Rios' unsolicited statement about narcotics at the conclusion of the trial would have reminded the jurors about such testimony and may have given the jurors reason to believe that petitioner was involved in drug activity. Similarly, defense counsel may have believed that a cautionary instruction on petitoner's prior conviction would have emphasized the prior conviction. *Jett,* Slip. Op. at * 6.

Trial counsel's decision not to request limiting instructions may have been perfectly sound from a tactical standpoint, because "such instructions inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize..." *See Ferguson v. Knight,* 809 F. 2d 1239, 1243 (6th Cir. 1987). *See also Ashe v. Jones,* 208 F. 3d 212 (Table); 2000 WL 263342, at *6 (6th Cir. February 29, 2000)(unpublished opinion)(stating that counsel may have decided, as part of a reasonable trial strategy, not to request an instruction limiting the jury's consideration of the prior bad acts evidence based on the belief that such an instruction would bring undue attention to the other acts*);Stamps v. Rees*, 834 F. 2d 1269, 1276 (6th Cir. 1987) (failure to request jury

12

admonition concerning permissible use of evidence of prior convictions did not constitute ineffective assistance "as it is quite evident that ... counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them"). In this case, petitioner has failed to overcome the presumption that counsel's decision to forego requesting any cautionary instructions was a reasonable trial tactic to avoid giving undue attention to petitioner's prior conviction or to the uncharged narcotics activity.

Petitioner next contends that counsel was ineffective in failing to object to numerous instances of alleged prosecutorial misconduct. The Michigan Court of Appeals rejected petitioner's claim by finding that many of the prosecutor's complained of remarks were supported by the evidence, and thus, were not improper. *Jett,* Slip. Op. at * 6. The Michigan Court of Appeals further found that even if it would have been appropriate for counsel to have objected to some of the complained of remarks, the Michigan Court of Appeals concluded that it could not find that counsel's failure to object was deficient trial performance, because "[T]here are times when it is better not to object and to draw attention to an improper argument." *Id.* (quoting *People v. Ullah,* 216 Mich. App. 669, 685; 550 N.W. 2d 568 (1996)). The Michigan Court of Appeals further concluded that petitioner had failed to show that but for counsel's failure to object, the result of the trial would have been different. *Id.*

As an initial matter, petitioner has failed to show that counsel was deficient for failing to object to the alleged prosecutorial misconduct. As the Michigan Court of Appeals indicated, petitioner has failed to show that many of the complained of prosecutorial remarks were improper. As for the prosecutorial misconduct comments that may have been improper, counsel may have believed that it was sound trial strategy not to object and bring the improper argument to the jury's

attention. Because counsel may have had sound tactical reasons for not objecting to the prosecutorial misconduct, petitioner is unable to establish that counsel was ineffective for failing to do so. *See Ege v. Yukins,* 380 F. Supp. 2d 852, 882 (E.D. Mich. 2005); *aff'd in part and rev'd in part on other grds,* 485 F.3d 364 (6th Cir. 2007).

Moreover, assuming that counsel was deficient for failing to object to the prosecutor's remarks, petitioner is unable to establish that the outcome would have been different had petitioner objected to these remarks. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the result of the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).

In the present case, any prosecutorial misconduct was harmless error, and thus, non-prejudicial, in light of the overwhelming evidence of guilt against petitioner. Although petitioner claims that he shot the victim in self-defense, after the victim pointed a weapon at him, the police did not find any firearms on the victim or near him. The only witnesses other than petitioner who claimed that the victim was armed with a weapon were Sherita and Barbara Jett, who had accompanied petitioner to the victim's house. The evidence further showed that the police recovered cartridge casings from only one weapon, suggesting that only one weapon was present during the altercation. The evidence unequivocally established that petitioner fired at least five shots at the victim after he had turned and walked away from petitioner. The victim was shot once in the back and once in the elbow.

Under Michigan law, one acts lawfully in self-defense if he honestly and reasonably

believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *See Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6th Cir. 1999)(*citing People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(internal citations omitted). Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Id.* at 609. "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Id.* In addition, under Michigan law, before using deadly force in self-defense, a person has a duty to retreat if it is safely possible to do so. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 602 (E.D. Mich. 2001)(citing *People v. Mroue*, 111 Mich. App. 759; 315 N.W. 2d 192 (1981)). In light of the fact that there was no credible evidence that the victim was armed with a firearm, coupled with the fact that petitioner used excessive force in firing several shots at the victim as he was walking away from petitioner, the evidence of petitioner's guilt was overwhelming.

Further evidence that petitioner's self-defense claim was without merit is the fact that petitioner fled the scene of the shooting. Petitioner at some point obtained a false identification and fled to the State of Georgia, where he was arrested some six years later. Under Michigan law, flight is relevant to consciousness of guilt. *See Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990).

15

Finally, there was evidence that petitioner gave the police a false name or alias at the time of his arrest, which was also evidence of consciousness of guilt. *See United States v. Clark*, 184 F. 3d 858, 869 (D.C. Cir. 1999).

In light of the overwhelming evidence against petitioner in this case, petitioner is unable to establish that he was prejudiced by counsel's failure to object to the alleged prosecutorial misconduct, so as to prevail on his ineffective assistance of counsel claim. *See Lundgren v. Mitchell,* 440 F. 3d 754, 775 (6th Cir. 2006).

Petitioner likewise cannot show that counsel was ineffective for failing to object to the prosecutor's closing argument, in light of the fact that the Michigan Court of Appeals found on direct appeal that the remarks were either not improper or non-prejudicial. *See Finkes v. Timmerman-Cooper,* 159 Fed. Appx. 604, 611 (6th Cir. 2005)*;Campbell v. United States,* 266 F. Supp. 2d 587, 589-90 (E.D. Mich. 2003). Petitioner is not entitled to relief on his fifth claim.

**E. Claim # 6. The sentencing claim.**

Petitioner next challenges his sentence of 480 to 960 months for second-degree murder.

Petitioner's sentence of forty to eighty years in prison for second-degree murder was within the statutory limits for that offense. A sentence imposed within the statutory limits is not generally subject to habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *See Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000).

The U.S. Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the U.S. Supreme Court concluded that the

Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Harmelin,* 501 U.S. at 1001.

Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). Federal courts therefore will not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See Seeger v. Straub*, 29 F. Supp. 2d 385, 392 (E.D. Mich. 1998). Petitioner's claim that his sentence is disproportionate under Michigan law thus would not state a claim upon which habeas relief can be granted. *See Whitfield v. Martin,* 157 F. Supp. 2d 758, 761 (E.D. Mich. 2001).

Petitioner's claim that the state trial court departed above the sentencing guidelines range of 120 to 300 months is not a cognizable claim for federal habeas review, because it is basically a state law claim. Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005). Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would not entitle him to habeas relief. *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999); *See also Drew v. Tessmer,* 195 F. Supp. 2d 887, 889-90 (E.D. Mich. 2001).

Petitioner finally contends that in scoring the sentencing guidelines range, the trial court violated the Supreme Court's holding in *Blakely v. Washington,* 542 U.S. 296 (2004), where the Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must

17

be submitted to the jury and proven beyond a reasonable doubt.

The problem with petitioner's reliance on *Blakely* is that the case in *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence. The decision in *Blakely* has no application to petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *See Blakely*, 542 U.S. at 304-05, 308-09. Because *Blakely* does not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's scoring of petitioner's sentencing guidelines range did not violate petitioner's Sixth Amendment rights. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007). Petitioner is not entitled to relief on his sixth claim.

**F. Claim # 7. The cumulative errors claim.**

Petitioner lastly alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim. *Id. See also Salters v. Palmer,* 271 F. Supp. 2d 980, 992 (E.D. Mich. 2003)

**IV.  ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**. The Court declines to issue a certificate of appealability because

reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

                                                              s/Lawrence P. Zatkoff
                                                              LAWRENCE P. ZATKOFF
                                                              UNITED STATES DISTRICT JUDGE

Dated: April 23, 2008

CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on April 23, 2008.

                                                               s/Marie E. Verlinde
                                                               Case Manager
                                                               (810) 984-3290